J-S02036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.I.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M., MOTHER | : | No. 1393 MDA 2019 |

Appeal from the Decree Entered August 13, 2019
in the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-8744

BEFORE:  BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:      **FILED: MARCH 2, 2020**

J.M. ("Mother") appeals from the Decree granting the Petition, filed by the Luzerne County Office of Children and Youth Services ("CYS"), seeking to involuntarily terminate her parental rights to her minor son, C.I.H. ("Child"), born in November 2014, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(8) and (b).[1]  We affirm.

In its Pa.R.A.P. 1925(a) Opinion, the trial court described the relevant history underlying the instant case as follows:

> [Child] has been in placement and therefore removed from the care of Mother since December 27, 2016.  The reason for placement was that [CYS] received information that [Child had] ingested the drug, Xanax, while in Mother's care.  [CYS] caseworkers arrived at Mother's residence and requested that

---

[1] On August 13, 2019, the trial court also entered a Decree involuntarily terminating the parental rights of Child's father, M.A.H. ("Father"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1) and (b).  Father has not filed a brief in the instant appeal, nor has he filed an appeal from the Decree terminating his parental rights.

[Child] be tested at a hospital; however, Mother refused. As a result, an emergency shelter care Court Order was requested and was granted by the [trial court].

Trial Court Opinion, 9/23/19, at 2-3.

On July 30, 2018, CYS filed Petitions to terminate the parental rights of Mother and Father to Child.[2] The trial court held evidentiary hearings on the Petitions on December 7, 2018, and May 16, 2019. At the December 7, 2018, hearing, CYS presented the testimony of Scott Carey ("Mr. Carey"), the Assistant Chief Executive Officer ("CEO") of Wyoming Valley Alcohol and Drug Services; Megan Kosik ("Ms. Kosik"), an employee of Family Service Association ("FSA"); Raina Cole ("Ms. Cole"), Director of Intake Services at Northeast Counseling Services; George Hockenbury ("Mr. Hockenbury") an

---

[2] On July 31, 2019, the trial court appointed Attorney Maria Turetsky ("Attorney Turetsky") to represent Child's legal interests and to serve as Child's guardian *ad litem* ("GAL"). The trial court's Order directed Attorney Turetsky to notify the trial court if she believed that there was a conflict in her representation of Child's legal interests and Child's best interests. *See In re Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017) (plurality) (holding that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding). The Court defined a child's legal interest as synonymous with his or her preferred outcome. *In Re Adoption of L.B.M.*, 161 A.2d at 174. Here, on July 10, 2019, Attorney Turetsky filed a written recommendation with the trial court, stating that termination of Mother's parental rights and adoption by Child's foster parents is in his best interests. *See* Trial Court Opinion, 9/23/19, at 20 (citing the Report and Recommendation of the GAL). We do not comment on the quality of her representation of Child. *See In re: Adoption of K.M.G.*, 219 A.3d 662, 669 (Pa. Super. 2019) (*en banc*) (holding that this Court has authority only to raise *sua sponte* the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation).

employee of Northern Tier Research; Louise Hogan ("Ms. Hogan"), the urinalysis monitor for Catholic Social Services; Jessica Otway ("Ms. Otway"), a caseworker for CYS; and Sherri Hartman ("Ms. Hartman"), an ongoing caseworker for CYS. At the hearing on May 16, 2019, after the completion of the questioning of Ms. Otway and Mr. Hockenbury, Mother's counsel presented the testimony of Mother; C.M., Mother's sister; and A.G., Mother's friend.

Relevant to this appeal, the trial court found the following from Mother's testimony at the May 16, 2019, hearing:

> Mother [] did not complete her parenting education. Ms. Otway testified that Mother began her services with [FSA,] which was "closed out" in March 2017. Mother participated in the "Concern" parenting program in April of 2017. Although Mother completed a portion of the nurturing parenting program, she did not complete the second portion and was unsuccessfully discharged due to her inconsistency with appointments. Then[,] three months later, Mother was referred again to [FSA]. [N.T. 5/16/19,] at 12-13. Mother returned to [FSA] and again did not successfully complete the program due to her lack of attendance. Ms. Otway testified that Mother was referred to [FSA] three times[,] and the last time she was referred was on July 2, 2018. *Id.* at 10-11.

> With respect to Mother's drug and alcohol services, Mother's attendance was sporadic and she was constantly in and out of services with [an] unsuccessful discharge. [Ms. Otway] testified that Mother was unsuccessfully discharged in May 2017. Mother again was "closed out" of services in December 2017. Mother was referred again in February 2018. New referrals were sent out as of July 2018. Ms. Otway testified that her office was continually making referrals for Mother. *Id.* at 15-16.

> ….

> Mother testified that the last time she used marijuana was in November 2018. *Id.* at 33. The [P]etition to terminate her parental rights, however, was filed on July 30, 2018. Therefore,

any conduct by Mother to remedy a condition subsequent to the filing day of the [P]etition to terminate her parental rights cannot be considered by [the trial court]. Ms. Otway testified that Mother had many opportunities to rectify her substance abuse issue during [Child's] placement[;] however, Mother continually tested positive for non-prescribed substances. *Id.* at 21-22.

Trial Court Opinion, 9/23/19, at 14-15.

In its Decree, the trial court found that CYS had shown, by clear and convincing evidence, that the termination of Mother's parental rights under section 2511(a)(8) and (b) was warranted. *Id.* at 3. On August 22, 2019, Mother timely filed a Notice of Appeal, along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother raises the following issue for our review:

Whether the trial court erred in terminating parental rights and/or abused its discretion in giving primary consideration[,] pursuant to 23 Pa.C.S.A. [§] 2511(b)[,] to the developmental, physical, and emotional needs and welfare of [Child,] because testimony presented at trial establishes a strong parent-child bond[, and that termination of parental rights] would be detrimental to the physical, emotional, and general well-being of the minor child[?]

Mother's Brief at 3.[3]

---

[3] Mother does not raise section 2511(a) in the statement of questions involved in her brief. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved is deemed waived). Thus, we find that Mother seeks to challenge the Decree pursuant to section 2511(b) only, and has waived any challenge based upon section 2511(a). Nevertheless, had Mother not waived a challenge to section 2511(a), we would conclude that such a challenge lacks merit.

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental

rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (internal quotation marks omitted) (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

As this Court has explained,

under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interests of the child. Although a needs and welfare analysis is mandated by the statute, it is distinct from and not relevant to a determination of whether the parent's conduct justifies termination of parental rights under the statute. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child.

*In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006).

Section 2511(b) provides as follows:

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

Mother challenges the trial court's determination that termination is warranted under section 2511(b). Mother's Brief at 8. Mother claims that she loves Child very much and supports him by continually engaging in visitation and performing parental duties such as feeding him, teaching him, and cleaning him. *Id.* Mother argues that Child has a strong parent-child bond with her, that he runs to her when he sees her, and that he does not want to leave her when it is time to leave. *Id.* Mother asserts that the testimony from her friend, A.G., and her sister, C.M., established that, when Mother had the ability to parent Child, she did parent him effectively. *Id.* Mother urges that the trial court failed to consider the tremendous detrimental effect that terminating her parental rights would have on Child. *Id.*

We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of

permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

We further observe the following:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent…. Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in [and] of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs

- 8 -

of the child. *See In re K.Z.S.*, 946 A.2d at 763-64 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

Our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *See In re: T.S.M.*, 71 A.3d at 267 (quoting *In re K.K.R.-S.*, 958 A.2d at 535). "Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (quoting *In re K.Z.S.*, 946 A.2d at 763).

The trial court considered the needs and welfare of Child, in discussing termination pursuant to section 2511(a):

> [CYS] presented credible testimony regarding the needs, welfare[,] and best interest of [Child] in relation to [] Mother. Ms. [] Hartman, a caseworker for [CYS], testified that she became involved in the case in December 2018. Ms. Hartman testified that [Child] was placed with the foster parents on May 18, 2017. According to Ms. Hartman, the foster family consists of the foster parents, and their three daughters. She stated that [Child] has assimilated into the family. He participates in family activities and is involved with the immediate family and extended family. Ms. Hartman testified that the foster parents are aware that in the event they were to adopt [Child], he would have all the rights of a biological child and would be able to inherit from their estate. N.T., 5/16/19, at 44-45.

Ms. Hartman testified that the foster parents meet [Child's] physical needs. They ensure that he has clothing, food, [and] shelter[,] and that his medical needs and educational needs are met. She further testified that the foster parents also meet [Child's] developmental needs by having [] [C]hild play with educational toys. [Child] is also in day care and has social interaction with other children.

Ms. Hartman further testified that the foster parents meet [Child's] emotional needs by being affectionate with him and supportive. When [Child] begins to cry, he seeks the foster parents for comfort. *Id.* at 46.

Ms. Hartman further noted that the foster parents have a parent[-]child relationship with [Child]. She testified that the foster parents and [C]hild have a very close bond with each other. [C]hild calls the foster mother "Mommy" and the foster dad "Daddy". Ms. Hartman testified that [Child] and his mother have a relationship that is similar to a "play date". Ms. Hartman testified that Mother was not consistent with her visits with [] [C]hild. Mother was required to call and confirm her visits for Mondays. However, Mother was forgetting to call and text. Therefore, there were no visits taking place on Mondays. Ms. Hartman testified that Mother's excuse was that she forgot to call and forgot to text to confirm her visits. *Id.* at 47-48.

Ms. Hartman testified that she believes that [] [C]hild has a stronger bond with the foster parents than with his natural [M]other. *Id.* at 49. She also believes that there would not be any detrimental impact on [Child] should the court terminate the parental rights of [] [M]other. Ms. Hartman explained that [Child] has been in placement for in excess of two years. He's very bonded with the foster family. *Id.* at 49. She believes that adoption of [Child] would serve his best interests.

Trial Court Opinion, 9/23/19, at 16-19.

The trial court found that Mother was given ample time to address and remedy her problems, but has failed to successfully do so. Trial Court Opinion, 9/23/19, at 20. The trial court found that Mother is not able to meet Child's needs, as she has failed to remedy her mental health issues, her drug and

alcohol issues, and has not completed her parenting education. *Id.* At the same time, Child's pre-adoptive foster parents have demonstrated that they meet Child's physical, development, and emotional needs, and Child has thrived in the care of his foster parents. *Id.*

Separately, the trial court then considered the needs and welfare of Child pursuant to section 2511(b):

> Once the [trial court] has found that involuntary termination of parental rights is warranted under the [Adoption Act], the [trial] court must then "give primary consideration to the developmental, physical and emotional needs and welfare of the child." This is to be a separate inquiry and even where the [trial] court has already considered the needs and the welfare of the child under one of the grounds of termination, the [trial] court must do so again. *In re Matsock*, 611 A.2d 738 ([Pa.]1992).

> The [trial court] has done this and finds the same considerations apply that have already been discussed extensively in this memorandum. Furthermore, the [trial court] applies the same reasoning for concluding that these needs will be served by the termination of Mother's parental rights.

Trial Court Opinion, 9/23/19, at 18-19.[4]

As Ms. Hartman testified, Mother has relied upon the foster parents to provide for Child's needs and welfare since he was removed from her care and custody in December 2016. Mother has not been consistent with calling and visiting Child since he was placed in foster care. Ms. Hartman explained that

---

[4] In its Opinion entered on September 23, 2019, the trial court made clear that, in reaching its conclusion with regard to section 2511(b), it did not take into account any environmental factors beyond the control of Mother. Trial Court Opinion, 9/23/19, at 18.

Child has been in placement for in excess of two years, and is very bonded with his foster family. Ms. Hartman testified that Child has a stronger bond with his foster parents than with Mother, and that there would not be any detrimental impact on Child from the termination of Mother's parental rights. Ms. Hartman believes that adoption of Child by his foster parents would serve his best interests. Similarly, in the Report and Recommendation of the GAL, Attorney Turetsky recommended that the parental rights of Mother should be terminated, and adoption by his foster parents was in his best interest. **See** Trial Court Opinion, 9/3/19, at 20. The trial court found to be credible Ms. Hartman's testimony that Child has no bond with Mother that would cause him to suffer emotional harm if severed by termination of Mother's parental rights.

Although Mother may profess to love Child and wish to get to know him, generally, this Court has stated that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. **In re L.M.**, 923 A.2d 505, 512 (Pa. Super. 2007). "[A] child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." **In re Z.P.**, 994 A.2d 1108, 1125 (Pa. Super. 2010) (citation and internal quotation marks omitted).

Here, the trial court found that Child's pre-adoptive foster parents have demonstrated that they meet Child's physical, developmental, and emotional needs, and Child has thrived in the care of his foster parents. Trial Court Opinion, 9/23/19, at 20. The trial court stated that Child needs and deserves

a permanent home with loving, capable parents, and that the only way to provide for such is through the termination of Mother's parental rights. *Id.* The trial court found that it was in Child's best interest to terminate Mother's parental rights. *Id.* at 20-21.

After a careful review of the record, this Court finds the trial court's decision to terminate the parental rights of Mother under section 2511(b) supported by competent, clear and convincing evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-27. Thus, we find no abuse of discretion in the trial court's termination of Mother's parental rights to Child. For the reasons expressed by the trial court, we affirm the decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/02/2020